L. M. STEINER AND HARRIET T. STEINER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51187. Filed October 17, 1955.

*Robert J. Johnson, Esq.,* for the petitioners.
*Thomas A. Steele, Jr., Esq.,* for the respondent.

### OPINION.

WITHEY, *Judge:* Respondent determined a deficiency of $305.78 in the income tax of petitioners for 1950 and an addition to tax of $1,308.36 under section 294 (d) (2) of the Internal Revenue Code of 1939.

The petitioners concede the correctness of the deficiency in tax determined by respondent. They also concede that if they were liable for an addition to tax under section 294 (d) (2) then the amount thereof as determined by respondent is correct. This leaves for determination only the question of whether the petitioners were liable for an addition to tax under section 294 (d) (2).

All of the facts have been stipulated and are found accordingly.

Petitioners filed their joint income tax returns for 1949 and 1950 with the collector of internal revenue at St. Paul, Minnesota.

Petitioners' 1949 income tax return disclosed adjusted gross income in the amount of $157,175.88, deductions of $20,800.88, net income in the amount of $136,375, and a tax liability of $66,667.75. The computation of petitioners' income tax for 1949 reflected net long-term capital gain in the amount of $18,243.42, resulting from the sale of 2,801 shares of stock in American Linen Supply Company, sometimes hereinafter referred to as American Linen.

Petitioners filed their joint declaration of estimated tax for 1950 with the collector of internal revenue at St. Paul, Minnesota, showing an estimated tax liability of $63,143.78 for the year. This estimate

of tax was based on estimated adjusted gross income of $137,251.86, deductions totaling $10,800.88, and net income of $126,450.98. In estimating their gross income for 1950, petitioners subtracted from their adjusted gross income for 1949 the sum of $18,243.42, representing net long-term capital gain realized from the sale of the American Linen stock in 1949, and $1,680.60, representing dividends received on such stock for that year. Petitioners made the foregoing adjustments in estimating their tax for 1950 because they did not anticipate any further disposition of stock or other capital assets during 1950 and they believed they were entitled to eliminate nonrecurring items in making such estimate.

Petitioners estimated withholdings on salary at $3,351.60, leaving a balance of $59,792.18 to be paid on their estimated tax for 1950. Quarterly installment payments were made on their estimated tax for 1950 as follows:

| | |
|---|---|
| Mar. 15, 1950 | $14,948.04 |
| June 15, 1950 | 14,948.04 |
| Sept. 11, 1950 | 14,948.04 |
| Jan. 11, 1951 | 14,948.06 |
| Total | $59,792.18 |

During 1949 and 1950 petitioner L. M. Steiner was a vice president and a director of American Linen. Throughout 1950 he owned 14,491 shares of stock in American Linen and petitioner Harriet T. Steiner owned 9,596 shares of stock in that corporation. Further, throughout 1949 and 1950 L. M. Steiner was the beneficiary of one-half the income of the Jess McIvor Steiner Trust and one-half the income of the Frank M. Steiner Trust. He also was co-trustee of each of the aforementioned trusts. The principal asset of each trust was stock in American Linen. During 1950 petitioner received distributions of the income of these trusts totaling $104,932.17.

In 1949 American Linen paid 4 quarterly dividends of 30 cents per share. Petitioners reported dividend income in the amount of $30,920 on their return for 1949. In 1950 American Linen paid quarterly dividends of 30 cents per share on the following dates: January 5, 1950, April 5, 1950, July 5, 1950, and September 5, 1950. In addition, it paid a further dividend of 30 cents per share on December 26, 1950. The payment of the latter dividend increased petitioners' income for 1950 by $28,872.90. If the additional dividend had not been paid, petitioners' net income as reflected on their final return would have been $125,345.09, a lower amount than the net income of $126,450.98 used by them in preparing their declaration of estimated tax for 1950.

No amended declaration of estimated tax for 1950 was filed.

Petitioners' income tax return for 1950 was filed on March 15, 1951. It disclosed a tax liability of $84,976.32, of which $3,683.86 was re-

ported as paid by withholding and $59,792.18 by payments on the declaration of estimated tax. Payment of $21,500.28 was made at the time the return was filed.

Concededly, petitioners' correct tax liability for 1950 was $85,282.10. Eighty per cent of that amount, or $68,225.68, is $4,749.64 in excess of petitioners' estimated tax payments increased by credits for actual withholdings totaling $63,476.04.

Petitioners' failure to meet the 80 per cent requirement of section 294 (d) (2) was not caused by the increase in normal tax and surtax rates on individuals imposed by the Revenue Act of 1950.

Petitioners take the position that the declaration of estimated tax for 1950 was computed "on the basis of the facts shown on * * * [their] return for the preceding taxable year," within the meaning of section 294 (d) (2) of the 1939 Code and that, accordingly, the addition to tax imposed under that section is not applicable.

Section 58 (a) of the 1939 Code imposes upon taxpayers a duty to file a declaration of estimated tax under specified circumstances.[1] Although the essential contents of the declaration of estimated tax are specified in section 58 (b) of the 1939 Code, the taxpayer is free to compute his estimated income tax liability in any manner he sees fit.[2] If, however, his correct tax liability exceeds the estimated tax by more than 20 per cent, section 294 (d) (2) provides for the imposi-

---

[1] SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(a) REQUIREMENT OF DECLARATION.—Every individual (other than an estate or trust and other than a nonresident alien with respect to whose wages, as defined in section 1621 (a), withholding under Subchapter D of Chapter 9 is not made applicable) shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—

(1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25 (b) ; or

(2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more.

[2] SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(b) CONTENTS OF DECLARATION.—In the declaration required under subsection (a) the individual shall state—

(1) the amount which he estimates as the amount of tax under this chapter for the taxable year, without regard to any credits under sections 32 and 35 for taxes withheld at source ;

(2) the amount which he estimates as the credits for the taxable year under sections 32 and 35 ; and

(3) the excess of the amount estimated under paragraph (1) over the amount estimated under paragraph (2), which excess for the purposes of this chapter shall be considered the estimated tax for the taxable year.

The declaration shall also contain such other information for the purposes of carrying out the provisions of this chapter as the Commissioner, with the approval of the Secretary, may by regulations prescribe, and shall contain or be verified by a written statement that it is made under the penalties of perjury.

tion of a 6 per cent addition to tax.[3]  Section 294 (d) (2) gives the taxpayer the privilege of computing his estimated tax on the basis of facts shown on his income tax return for the preceding taxable year, in which event the addition to tax for substantial underestimation of tax does not apply.

In support of their position, petitioners contend that the computation of their estimated tax for 1950 was based upon the amount of adjusted gross income reported in their return for 1949 and, further, that the sale of the American Linen stock, likewise reported on their return for 1949, created a nonrecurring type of income which may be disregarded in computing the estimated tax for 1950.  We cannot agree with petitioners' contentions.  We do not think that by use of the language, "on the basis of the facts shown on his return for the preceding taxable year," Congress meant to include every inference which might be drawn from information reported on the return.  It is our opinion that the phrase "facts shown on his return for the preceding taxable year," as used in section 294 (d) (2), means the elements which enter into an income tax computation, such as income, deductions, gains, losses, exemptions, marital status, credits, etc., rather than the refinements of transactions giving rise to these particular items.

We believe petitioners' action in failing to amend their 1950 declaration of estimated tax or file their final return in lieu thereof by January 15, 1951, even though they knew before January 15 of the following year that it did not properly reflect their *full* taxable income, had the effect of violating the provisions of section 58 (a) and (d) of the 1939 Code, thereby placing them outside the section 294 (d) (2) exemption provision.  Regardless of the fact that the two sections of the 1939

---

[3] SEC. 294.    ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

　(d) ESTIMATED TAX.—

　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　　(2) SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60 (a), or 66⅔ per centum of such tax so determined in the case of such farmers, exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser.  This paragraph shall not apply to the taxable year in which falls the death of the taxpayer, nor, under regulations prescribed by the Commissioner with the approval of the Secretary, shall it apply to the taxable year in which the taxpayer makes a timely payment of estimated tax within or before each quarter (excluding, in case the taxable year begins in 1943, any quarter beginning prior to July 1, 1943) of such year (or in the case of farmers exercising an election under section 60 (a), within the last quarter) in an amount at least as great as though computed (under such regulations) on the basis of the taxpayer's status with respect to the personal exemption and credit for dependents on the date of the filing of the declaration for such taxable year (or in the case of any such farmer, or in case the fifteenth day of the third month of the taxable year occurs after July 1, on July 1 of the taxable year) but otherwise on the basis of the facts shown on his return for the preceding taxable year. \* \* \*

Code were adopted at different and rather widely separated times, they are nevertheless, in part at least, concerned with the same subject matter, i. e., the filing of declarations of estimated tax, and must, therefore, be read together. It is true that Congress has by these provisions made it mandatory that an estimation of tax be filed but that its provisions for the filing of amendments thereto are permissive. Yet, we think that the two acts, read from their four corners, and read together with respect to like subject matter, require the conclusion that a taxpayer must estimate as nearly accurately as he reasonably can the income taxes to be levied and assessed against him for any given year and that should he find during a tax year that his original declaration does not reflect the tax upon his *full* income it is the intent of Congress that he shall amend his declaration so as to do so. The main and primary "fact" with which Congress was concerned in the above-quoted phrase from section 294 (d) (2) was, was *all* of the taxable income reasonably known to petitioners throughout the tax year used in the computation of their estimated tax? An estimation of tax based upon less than all such income is in direct contravention of Congressional intent. Indeed, Congress has provided a penalty for so doing if, as here, the estimated tax falls below 80 per cent of the actual tax liability and a construction of the statutes here involved which permits escape of penalty when less than all known income is used in the computation of the tax estimate vitiates and emasculates the provisions of the 1939 Code with respect to the entire subject matter of declarations of estimated tax. We think petitioners were not bound to include in their computation of 1950 estimate items of 1949 income which they peculiarly knew would not recur, but, in so doing, they took themselves out from under the provisions of section 294 (d) (2) and therefore we think they were obligated to amend their estimate or file their tax return on or before January 15 of 1951 when they concededly knew that their declaration of estimated tax as filed did not reflect *all* of their income for 1950. So far as appears from this record, their 1949 income tax computation was based upon *all* of their 1949 taxable income. That is the factual basis of their 1949 computation of income tax which they failed to use in the computation of their declaration of estimated tax for 1950.

Reviewed by the Court.

*Decision will be entered for the respondent.*